IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS BURLINGTON | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 09-1908 |
| NEWS CORPORATION, ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.**                                    **MARCH  29 , 2016**

Presently before the Court is Plaintiff's Motion Pursuant To Federal Rules of Civil

Procedure 50 and 59 For Judgment As A Matter Of Law Or, In The Alternative, For A New

Trial.  (ECF No. 184.)  For the following reasons, Plaintiff's Motion will be denied.

## I.      BACKGROUND

In this action, Plaintiff sought damages for the termination of his employment as a

television news anchor at Defendants' Fox Television Stations of Philadelphia, Inc. and Fox

Television Stations, Inc. ("Fox 29").  Plaintiff brought claims for race discrimination under Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(a) *et seq.*, under 42 U.S.C. § 1981, and

under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951 *et seq*.  Following a

five-day trial, the jury returned a verdict in favor of Defendants.  Plaintiff moves for post-trial

relief under Federal Rules of Civil Procedure 50 and 59.

### A.      Factual Background

On Saturday, June 23, 2007, Plaintiff attended a newsroom editorial meeting with his Fox

29 colleagues.  At the meeting, they discussed news stories that were to be presented during the

evening telecast.  While discussing a news story on the symbolic burial of the "n-word" by a

local chapter of the NAACP, Plaintiff stated:  "does this mean we can finally say the word

'nigger.'" (June 8, 2015 P.M. Trial Tr. 16, ECF No. 163.)  Several colleagues were upset by the comment and at least one colleague replied, "I can't believe you just said that." (*Id.*)  The meeting ended shortly thereafter.  Plaintiff attempted to apologize to some of the employees who were present at the meeting.  His apologies were not well received.  In fact, he used the word "nigger" once again in the course of apologizing to an employee.  (June 11, 2015 A.M. Trial Tr. 139, ECF No. 172.)  He also engaged in a heated exchange with his on-air co-anchor, Joyce Evans on the subject.  (June 9, 2015 P.M. Trial Tr. 99-102, ECF No. 167.)

In the days that followed, the Fox 29 assistant news manager, Leslie Tyler, became aware of the newsroom meeting incident.  (June 9, 2015 A.M. Trial Tr. 18, 20-21, ECF No. 166.)  She contacted a few of the meeting attendees to preliminarily inquire as to what happened and to see how they were doing.  (*Id*. at 26.)  Tyler reported her initial findings to the news manager, Phil Metlin (*id*. at 37), who later informed the station general manager, Mike Renda (June 10, 2015 A.M. Trial Tr. 12, ECF No. 169).  Renda instructed Metlin to preliminarily gather facts regarding the June 23 meeting and report back.  (June 9 A.M. Trial Tr. 93-95, 100.)  On June 29, 2007, after Metlin reported back, Renda decided that Plaintiff should be suspended, with pay, pending a full human resources investigation.  (*Id*.)  Metlin, along with human resources director Ameena Ali, were instructed to inform Plaintiff of his suspension and to conduct a full investigation.  (*Id*.)

Ali went about contacting various employees who were present at the June 23 meeting. While Ali's investigation continued, Plaintiff was referred to sensitivity training.  (June 10, 2015 P.M. Trial Tr., ECF No. 170; Pl.'s Mot. Ex. "G" 14.)[1]  Ali and Renda were informed on July 8 or 9 that Plaintiff had completed his sensitivity training and was fit to return to work.  (June 9 A.M.

---

[1] The testimony of Ameena Ali was presented via videotaped trial deposition.  The transcript of that testimony is not included within the Court's official Trial Transcript, but is included as Exhibit "G" to Plaintiff's Motion.

Trial Tr. 112, 133.)  Notwithstanding the sensitivity training, Renda believed that Plaintiff still did not understand the implications of his language and actions.  (*Id*. at 119, 123.)  In addition, around this time, a series of news articles appeared in the local Philadelphia print media regarding Plaintiff's actions on June 23.  (June 9 P.M. Trial Tr. 21.)  The articles presented Plaintiff and the station in a negative light.  (*Id*.)  At this time, Renda, the sole individual with authority to decide Plaintiff's employment fate, had to make a decision.  (June 9 A.M. Trial Tr. 103-04.)  On July 12, 2007, Renda offered Plaintiff the opportunity to resign and sign a general release.  (June 9 P.M. Trial Tr. 116-18.)  Plaintiff declined to do so.  (*Id*.)  Renda then informed Plaintiff that the station would not renew his employment contract and would no longer use his news services on air.  (*Id*.)  Plaintiff was paid all of his salary that was due under his employment contract; however, he did not return to work at Fox 29.

### B.      Procedural Background

Plaintiff began this action by filing a Complaint on May 4, 2009.  (Compl., ECF No. 1.) After the close of discovery, Defendants moved for summary judgment.  (Defs.' Mot. for Summ. J., ECF No. 26.)  Defendants' motion was granted in part, and denied in part, by Memorandum and Order dated December 28, 2010.  (ECF Nos. 48-49); *Burlington v. News Corp.*, 759 F. Supp. 2d. 580, 603 (E.D. Pa. 2010).  Defendants sought reconsideration of the December 28, 2010 Order.  (Defs.' Mot. for Reconsideration, ECF No. 50.)  In light of a pending decision by the Supreme Court in the case of *Staub v. Proctor Hospital*, and its potential impact on legal issues raised in this matter, we directed that this matter be placed in civil suspense.  (ECF Nos. 55-56.) After the Supreme Court handed down its decision in *Staub*, 562 U.S. 411 (2011), and after full briefing by the parties, we denied Defendants' Motion for Reconsideration by Memorandum and Order dated October 24, 2014.  (ECF No. 67.)  *See Burlington v. News Corp.*, 55 F. Supp. 3d.

723, 741-42 (E.D. Pa. 2014).  Defendants sought certification of the October 24, 2014 Order to

pursue an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  (ECF No. 71.)  Certification

was denied by Memorandum and Order dated January 12, 2015.  (ECF No. 75.)  *See Burlington*

*v. News Corp.*, No. 09-1908, 2015 WL 158746, at *5 (E.D. Pa. Jan. 12, 2015).

The case proceeded to trial on June 8, 2015.  On June 11, 2015, the parties concluded

presentation of the evidence and testimony.  Closing arguments were held on June 15, 2015, and

the jury was instructed on the applicable law.  After deliberations, the jury returned a verdict in

favor of Defendants.  The jury found that Plaintiff had failed to establish that his race was a

determinative or a motivating factor in the Defendants' decision to end the employment

relationship.  (Verdict Slip ¶¶ 1-2, ECF No. 178.)  On July 13, 2015, Plaintiff filed the instant

Motion.  (Pl.'s Mot., ECF No. 184; Pl.'s Br., ECF Nos. 184-2 & 184-3.)  Defendants filed a

Response in Opposition on July 30, 2015.  (Defs.' Resp. Br., ECF No. 186.)

## II.    LEGAL STANDARD

### A.    Standard of Review Under Rule 50

Federal Rule of Civil Procedure 50 permits a court to enter judgment as a matter of law

where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis

to find for the [nonmoving] party on that issue."  Fed. R. Civ. P. 50(a)(1).  "[I]n entertaining a

motion for judgment as a matter of law, the court should review all of the evidence in the

record."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  All reasonable

inferences must be drawn in favor of the nonmoving party, and the court is not permitted to make

credibility determinations or weigh the evidence.  *Id.*  "The question is not whether there is

literally no evidence supporting the party against whom the motion is directed but whether there

is evidence upon which the jury could properly find a verdict for that party."  *Walter v. Holiday*

*Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993) (internal quotation marks and citation omitted).

Where the movant bears the burden of proof at trial, a "strict test" must be met. *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976), *cert. denied*, 429 U.S. 1053 (1977).  The test "requires the judge to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect." *Id.* (internal quotation marks and citations omitted).  The court must be able to say "not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding." *Id.* (internal quotation marks and citations omitted).  "[C]onflicting evidence which could reasonably lead to inconsistent conclusions will not justify a judgment notwithstanding the verdict . . . . It is the function of the trier of fact alone, the jury in this instance, to evaluate contradictory evidence and to draw inferences therefrom." *Id.* at 1178 (citations omitted).

### B.      Standard of Review Under Rule 59

Federal Rule of Civil Procedure 59 permits a court to order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  Rule 59(a) does not specify the basis on which a court may grant a new trial, but rather leaves the decision to the discretion of the district court. *See Blancha v. Raymark Indus.,* 972 F.2d 507, 512 (3d Cir. 1992) ("The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court.") (citing *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36 (1980)).  Courts have granted new trials when there have been prejudicial errors of law or when the verdict is against the weight of the evidence. *See Maylie v. Nat'l R.R. Passenger Corp.,* 791 F. Supp. 477, 480 (E.D. Pa. 1992), *aff'd*, 983 F.2d 1051 (3d Cir. 1992) (citations omitted).

The scope of the district court's discretion when deciding a Rule 59 motion depends on whether the motion is based on a prejudicial error of law or on a verdict alleged to be against the weight of the evidence. *See Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993). When the basis of the motion involves a matter within the trial court's sound discretion, such as the court's evidentiary rulings or points for charge to the jury, the trial court has wide latitude in deciding the motion. *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 921-22 (3d Cir. 1986); *see also Klein*, 992 F.2d at 1289-90. The court must determine: (1) "whether an error was in fact made;" and (2) "whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." *Bhaya v. Westinghouse Elec. Corp.*, 709 F. Supp. 600, 601 (E.D. Pa. 1989) (internal quotation marks and citation omitted).

However, the district court's discretion to order a new trial is narrower when the verdict is alleged to be against the weight of the evidence, *Klein*, 992 F.2d at 1290, and the district court is cautioned not to "substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury,'" *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 211 (3d Cir. 1992), *cert. denied*, 507 U.S. 921 (1993) (quoting *Lind v. Schenley Indus. Inc.*, 278 F.2d 79, 90 (3d Cir. 1960) (en banc), *cert. denied*, 364 U.S. 835 (1960)). Since a determination that a jury's verdict was against the weight of the evidence "effects a denigration of the jury system," a court may grant such motion "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352-53 (3d Cir. 1991) (citation omitted).

### III.    DISCUSSION

With regard to both the Motion under Rule 50 and the Motion under Rule 59, Plaintiff argues that the verdict was against the weight of the evidence.  Plaintiff also argues that he is entitled to a new trial under Rule 59 because of the improper conduct of defense counsel during the trial.  Defendants respond that Plaintiff has waived his right to bring any of these post-trial challenges.  Defendants also argue that the jury's verdict was clearly based upon the evidence and was proper.

### A.    Plaintiff's Rule 50 Motion for Judgment as a Matter of Law

Plaintiff first moves for judgment as a matter of law.  He argues that the uncontroverted evidence presented at trial established that race played a part in the decision to end his employment at Fox 29.  Before addressing the merits of this argument, we will address the procedural objection raised by Defendants, that is that Plaintiff has waived the right to move for judgment under Rule 50(b).

Rule 50 permits a party to move for judgment as a matter of law at any time prior to the case being submitted to the jury.  Fed. R. Civ. P. 50(a)(2).  If the court denies the motion, then the party may renew the motion after the jury returns its verdict, not later than 28 days after the entry of judgment.  Fed. R. Civ. P. 50(b).  Moving for judgment as a matter of law under Rule 50(a), prior to the case being submitted to a jury, is a *mandatory prerequisite* to filing a post-trial motion under Rule 50(b).  *See Gebhardt v. Wilson Freight Forwarding Co.*, 348 F.2d 129, 132 (3d Cir. 1965); *Follette v. Nat'l Tea Co.*, 460 F.2d 254, 255 (3d Cir. 1972) (per curiam).  As observed by the Third Circuit:  "A motion for judgment notwithstanding the verdict *cannot* be made unless a motion for directed verdict was made by the party at the close of all the evidence."  *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1261 (3d Cir. 1991) (internal quotation marks and

citation omitted) (emphasis added); *see also Lowenstein v. Pepsi-Cola Bottling Co. of Pennsauken*, 536 F.2d 9, 10 (3d Cir. 1976), *cert. denied*, 429 U.S. 966 (1976) (noting that "Rule 50(b) requires that, as one predicate to judgment N.O.V., a motion for a directed verdict be made after presentation of all the evidence.").

 Plaintiff admits that he failed to move for judgment as a matter of law at the close of the evidence and prior to the case being submitted to the jury.  (Pl.'s Br. 39 ("Plaintiff did not move for judgment as a matter of law before the case was submitted to the jury . . . .").)  Plaintiff's failure to do so is fatal to his Motion pursuant to Rule 50(b).  Accordingly, Plaintiff's Motion for judgment as a matter of law must be denied.[2]

### B. Plaintiff's Rule 59 Motion for New Trial

 Plaintiff alternatively moves for a new trial under Rule 59.  He argues that the verdict was against the weight of the evidence.  In addition, Plaintiff argues that certain improprieties that occurred during Defendants' closing argument warrant the granting of a new trial.

#### 1. *Whether the Verdict was Against the Weight of the Evidence*

 Plaintiff first contends that he is entitled to a new trial because the verdict was against the weight of the evidence.  Defendants respond that Plaintiff has waived the right to raise this argument now.  Defendants also contend that the jury's verdict was properly supported by the evidence presented at trial.

 Similar to the prerequisites for raising a Rule 50 post-trial motion, a Rule 59 post-trial attack on the sufficiency of the evidence requires that the aggrieved party move for a directed verdict at the close of all of the evidence.  *Yohannon*, 924 F.2d at 1262 (noting that "[o]n sufficiency, the failure to move for a directed verdict at the close of all evidence does more than

---

 [2] Even if Plaintiff did not waive the right to raise a Rule 50(b) motion, such a motion would be denied on the merits.  As discussed in greater detail, *infra* at Section B.1, the jury's verdict was sound and cannot be considered to be against the weight of the evidence.

limit an aggrieved party's remedy to a new trial.  In this Circuit, it wholly waives the right to

mount any post-trial attack on the sufficiency of the evidence."); *see also Greenleaf v. Garlock,*

*Inc.*, 174 F.3d 352, 364 (3d Cir. 1999) (same); *Hussein v. Universal Dev. Mgmt., Inc.*, No. 01-

2381, 2006 WL 8091008, at *5 (W.D. Pa. Jan. 3, 2006) (same); *Stadtlander Drug Co., Inc. v.*

*Brock Control Sys., Inc.*, 174 F.R.D. 637, 640-41 (W.D. Pa. 1997) (same).  Plaintiff did not move

for a directed verdict prior to the case being submitted to the jury.  Accordingly, Plaintiff has

waived the right to seek a new trial under Rule 59 based upon a sufficiency of the evidence

challenge.

Even if Plaintiff had not waived the right to raise this post-trial attack on the sufficiency

of the evidence, the jury's verdict here was more than supported by the evidence of record.

Plaintiff focuses his sufficiency of the evidence attack on his claim under Title VII.  (Pl.'s Br. 44,

50-51, 58.)  He contends that the jury's conclusion, that his race was not a motivating a factor in

Defendants' decision to end his employment (*see* Verdict Slip ¶ 2), is against the weight of the

evidence.[3]

With regard to Plaintiff's Title VII claim, he was required to establish that his race was a

"motivating factor" in Defendants' decision to end his employment.  Third Circuit Model Jury

Instructions § 5.1.1 (Oct. 2014); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003).  To show

that his race was a "motivating factor," Plaintiff only needed to prove that his race "played a

---

[3] The jury was instructed on both the less-burdensome, mixed-motive standard, set forth in 42 U.S.C. § 2000e-2(m), and the pretext standard, set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the pretext standard, the jury was asked to decide whether Plaintiff established that his race was a "determinative factor" in the decision to end his employment.  (Verdict Slip ¶ 1.)  Under the mixed-motive standard, the jury was asked to decide whether Plaintiff established that his race was a "motivating factor" in the decision to end his employment.  (*Id.* ¶ 2.)  The jury answered both questions in the negative, which resulted in a complete verdict for the Defendants.  Because Plaintiff does not address the pretext standard in his Motion, we need not address that issue here.

part" in the decision to end his employment.  Third Circuit Model Jury Instructions § 5.1.1.  This may be established through direct or circumstantial evidence.  *Desert Palace*, 539 U.S. at 101.

At trial, Plaintiff presented the testimony of Mike Renda, the then-general manager at Fox 29.  (June 9 A.M. Trial Tr. 84.)  As general manager, Renda was the head of the station.  (*Id*. at 85-86.)  All department heads, including the news director and human resources director, reported to him.  (*Id*.)  Renda was not present for the June 23, 2007 newsroom meeting, but heard about the events and Plaintiff's statements, from the station news director, on the following Monday or Tuesday.  (*Id*. at 90.)  He instructed the news director to gather more information as to what happened, and after more information was provided as of Friday, June 29, Renda determined to place Plaintiff on suspension pending an investigation by human resources.  (*Id*. at 93-95, 100.)  As of July 3, 2007, Renda had received more information from the human resources director and he determined that Plaintiff was to be given a final warning regarding his language in the workplace.  He also referred Plaintiff to sensitivity training.  (*Id*. at 102.)  In the days that followed, a series of news articles regarding Plaintiff's actions at the June 23 news meeting surfaced in the local Philadelphia press.  (*Id*. at 109.)  From Renda's perspective, the news articles were very "damaging" to Fox 29 and Plaintiff.  (*Id*. at 111.)  As of July 9, Plaintiff had completed his sensitivity training and was deemed fit to return to work.  Renda considered the possibility of Plaintiff's return to work.  (*Id*. at 112, 133.)  He ultimately determined to end Plaintiff's employment relationship with Fox 29.  (*Id*. at 103-04, 112-17.)  He came to this decision after consulting with the station's counsel.  (June 9 P.M. Trial Tr. 21-22.)  On July 12, Renda offered Plaintiff the opportunity to resign.  (June 9 A.M. Trial Tr. at 116-18.)  After Plaintiff declined to do so, Renda informed Plaintiff that his contract would be paid out and it would not be renewed.  (*Id*. at 118.)

Renda repeatedly testified that race did not play a part in his decision to not continue Plaintiff's employment at Fox 29.  (June 9 P.M. Trial Tr. 13, 21-22.)  He indicated that his decision was based largely on the "unbelievably negative press" that the station was receiving regarding Plaintiff's situation.  (*Id*. at 21, 23.)  Renda also indicated that Plaintiff's apparent insensitivity, or lack of understanding, regarding what he had said on June 23 was a contributing factor.  (June 9 A.M. Trial Tr. 119, 123.)  Renda sought repeatedly to clarify that Plaintiff was not fired or terminated; rather, Plaintiff was afforded the option to resign, and when Plaintiff declined to do so, Fox 29 invoked the "pay or play" provision in the employment contract.  (June 9 A.M. Trial Tr. 104, 112.)  The "pay or play" provision in Plaintiff's employment contract gave Fox 29 the sole discretion to use Plaintiff's services on its television newscasts.  (June 9 P.M. Trial Tr. 24-25.)  Even though he would not appear on air, Plaintiff would continue to receive his salary under his employment contract.  (*Id*.)  In Renda's view, Fox 29 simply paid Plaintiff the monies that he was due under his contract, while declining to use his services for its newscasts. (*Id*. at 25.)

Phil Metlin was the then-news director at Fox 29, whose discovery deposition testimony was presented at trial.  (June 9 P.M. Trial Tr. 116.)  Metlin did not have the authority to decide to terminate or renew Plaintiff's employment at Fox 29, but in his capacity as news director he had the ability to make recommendations to Renda regarding Plaintiff's employment status.  (*Id*. at 117-18.)  Metlin was informed about the June 23, 2007 meeting and Plaintiff's actions a short-time thereafter, via a telephone call from Leslie Tyler, the assistant news director.  (June 10 A.M. Trial Tr. 12.)  He did not recall in great detail what he was told, but he remembered being very upset that Plaintiff would use such insensitive language and he was concerned that the employees in the newsroom were very upset.  (*Id*. at 12-14, 27-28.)  He was also told that Plaintiff attempted

11

to apologize for his actions, but used the word again in his apologies and that Plaintiff still did not understand the ramifications of his actions.  (*Id*. at 27.)  On June 29, Renda, the sole decision maker (*id*. at 18), instructed Metlin to sit down with Plaintiff and inform him of his suspension (*Id*. at 16-17.)  At the June 29 meeting, Plaintiff again used the word "nigger" in explaining what happened on June 23.  (*Id*. at 25-26.)  Metlin believed that Plaintiff wanted to use the word in an attempt to remove the "hateful power" of the word.  (*Id*. at 25-26.)  Ultimately, Fox 29 determined to pay out Plaintiff's contract and part ways with his news services due to the negative publicity surrounding the incident, and Plaintiff's lack of remorse and failure to understand the implications of using such insensitive language.  (*Id*. at 40-43.)  Metlin testified that race was never a factor in any employment decision he saw while at Fox 29, including Plaintiff's, or in any employment recommendation that he made.  (*Id*. at 49-50.)  He also indicated that he would have supported Renda's decision.  (*Id*.)

Ameena Ali was the then-human resources director at Fox 29, whose video-taped trial deposition was presented to the jury.  On June 29, 2007, Ali became aware of the June 23 incident at a meeting with Renda and Metlin.  (Pl.'s Mot. Ex. "G" 24-26.)  At Renda's direction, she and Metlin were to inform Plaintiff that he was suspended, and were to perform a human resources investigation into Plaintiff's actions at the June 23 newsroom meeting.  (*Id*. at 8, 28.)  Ali's role was to be neutral and simply gather facts.  Any personal offense that she may have felt as to the language that Plaintiff used did not affect her duties as a human resources professional. (*Id*. at 14, 52-53.)  In the course of her investigation, the issue of race never came up.  (*Id*. at 40.)  After sharing her investigative results to Renda, she and Renda met with Plaintiff on July 12, 2007.  (*Id*. at 107.)  She did not offer any recommendation as to Plaintiff's employment status. (*Id*. at 167.)  During this meeting, Plaintiff was offered the chance to resign.  He declined and

was informed that his contract would be paid out and not renewed.  (*Id*. at 107-08.)  Renda asserted that the decision was made due to the immense negative press the station was receiving, as well as safety concerns that certain employees expressed regarding their continued work with Plaintiff.  (*Id*.)

As with Renda, Ali was adamant that race never came into play—"[i]t was the egregiousness of the language in the workplace."  (*Id*. at 124-25; *see also id*. at 146, 170-71.) She had no reason to believe that Plaintiff's race played any role in the decision not to renew his contract.  (*Id*. at 171.)  Ali also testified that any employee may be subject to termination at Fox 29 for bringing adverse publicity on the station.  In fact, a weather anchor had previously been terminated for that very reason.  (*Id*. at 140.)

Based upon this testimony, there is more than a sufficient basis for the jury to conclude that Plaintiff's race played no part in the decision not to renew his contract.  The jury was free to accept or reject all, some, or none of the testimony provided by Renda, Metlin, and Ali.  Based upon the jury's verdict, it is clear that the jury found the testimony provided by these individuals to be credible.  It is clear that the jury concluded that Plaintiff's race did not play any part in the decision to end his employment relationship with Fox 29.  This credibility determination and the ultimate conclusion does not constitute a manifest injustice.

Plaintiff attempts to avoid the realities of this testimony by pointing to select portions of testimony.  He notes that he did not intend to offend anyone at the June 23 meeting, and that others at Fox 29 were not offended by the use of the word "nigger" in news stories or by use by his African American colleagues at Fox 29.  (Pl.'s Br. 51-53.)  He gives a number of examples of the reactions of his Fox 29 colleagues as to what he said on June 23 to establish that there was a racial component to the situation.  (*Id*. 51-57.)  He also cites to the supposed actions of

colleagues at Fox 29 to imply that the ultimate employment decision was motivated by race.  (*Id*. at 57.)[4]  Plaintiff argues that a double-standard existed at Fox 29, namely that his contract was not renewed for his actions, yet others used inappropriate language in the workplace without repercussion.  (*Id*. at 53.)  He contends that Renda, Ali, and Metlin exhibited a race-based bias in conducting the investigation that ultimately led to Renda's decision not to renew Plaintiff's contract.  (*Id*. at 54-56.)  And he calls into question the veracity of Renda's testimony at trial, particularly as to the race-neutral reasons Renda cited for the decision that he made.  (*Id*. at 57-58.)  Based upon the totality of these circumstances, Plaintiff maintains that the verdict was against the weight of the evidence.

Plaintiff's arguments must fail.  His arguments are largely premised upon a re-weighing of the credibility of witnesses.  He claims that Renda's testimony was not credible regarding the reasons for his decision on Plaintiff's employment status, but that was a decision solely for the jury to make.  Plaintiff's arguments cannot be considered as anything other than an *ex-post facto* attempt to impeach the credibility of Renda's testimony.  That is simply not appropriate.

---

[4] Prior to trial, Plaintiff placed great emphasis on the alleged actions of Plaintiff's news-anchor colleague, Joyce Evans, to show that the ultimate decision was, at least in part, motivated by race.  This was the subject of a great deal of pre-trial litigation.  *See Burlington*, 759 F. Supp. 2d. at 598-600; *Burlington*, 55 F. Supp. 3d. at 734-41.  Plaintiff argued that Evans was motivated by race to seek Plaintiff's ouster from Fox 29, and sought to influence those involved in the decision making process, particularly Ali.

Joyce Evans testified at trial.  Her testimony did not appear to support the emphasis that Plaintiff placed on her alleged actions prior to trial.  She testified that she was on vacation during much of Plaintiff's suspension, and upon her return had received a few voicemails from certain black journalism groups requesting comment on Plaintiff's situation.  (June 9 P.M. Trial Tr. 80.)  She called Ali to ask how to handle the voicemails, and ended up never returning those calls.  (*Id*.)  Ali corroborated this testimony, noting that Evans made a short call to her requesting what to do, and was never specific as to the nature of the voicemails or where they came from.  (June 10 P.M. Trial Tr. 117.)  According to Ali, Evans never made a request or recommendation regarding Plaintiff's continued employment status at Fox 29.  (*Id*. at 164.)  And according to Renda, the ultimate decision maker, he never heard of any comments by Evans and he had no interest in any opinion from Evans regarding Plaintiff's employment status.  (June 9 P.M. Trial Tr. 26.)

Plaintiff had a fair opportunity to impeach Renda's credibility at trial.  Notwithstanding those

impeachment attempts, the jury evidently found that the testimony was credible.  The standard in

reviewing a request for a new trial on a sufficiency of the evidence challenge is worth repeating

here:

> When the district court grants a motion for a new trial based on the weight of the
> evidence, the court has:
>
> to some extent at least, substituted [its] judgment of the facts and the credibility of
> the witnesses for that of the jury.  Such an action effects a denigration of the jury
> system and to the extent that new trials are granted the judge takes over, if he does
> not usurp, the prime function of the jury as the trier of facts.

*Williamson*, 926 F.2d at 1352 (citation omitted).  The jury's decision here is supported by the

record.

Plaintiff correctly notes that he needed to *prove* that his race was a motivating factor in

Fox 29's decision not to continue with his employment.  However, he overlooks the fact that

Plaintiff and Defendants presented conflicting evidence on the issue.  Renda, Ali, and Metlin all

provided consistent testimony that Plaintiff's race played no part in the investigation and

ultimate decision by Renda not to renew Plaintiff's employment contract.  Moreover, Renda

testified that because of the adverse publicity and the work environment that had been created by

this incident, Fox 29 simply invoked the "pay or play" provision in Plaintiff's employment

contract.  That provision allowed Fox 29 the sole discretion not to use Plaintiff's services on its

news telecasts, while at the same time paying Plaintiff the salary monies that he was due.

Plaintiff's circumstantial evidence to the contrary notwithstanding, the jury was free to accept the

evidence that Defendants did not use race as any factor in the decision regarding Plaintiff's

employment status.  The fact that the jury did so here, "and reject[ed] Plaintiff's characterization

of that evidence and testimony, does not suggest that the verdict was improper." *Kinsler v. City of Philadelphia.*, No. 13-6412, 2015 WL 3970899, at *8 (E.D. Pa. June 29, 2015).

Ultimately, "[t]he subject matter of the litigation before [the jury was] simple and easily comprehended by any intelligent layman.  The jury's main function was to determine the veracity of the witnesses:  i.e. what testimony should be believed." *Lind*, 278 F.2d at 91.  When a matter falls within this category, the court "is given less freedom to scrutinize the jury's verdict" and should be reluctant to grant a new trial.  *Klein*, 992 F.2d at 1290.  Based upon this record, there is no reason to grant a new trial.  Plaintiff may well believe that his race played a role in Fox 29's decision not to renew his contract.  He certainly attempted to convey that belief to the jury.  But, "the subjective belief that race played a part in his [termination] is insufficient." *Tucker v. Thomas Jefferson Univ.*, 484 F. App'x 710, 712 (3d Cir. 2012) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 414 (3d Cir. 1999)).

The verdict in this case does not constitute a manifest injustice.  Plaintiff's Rule 59 Motion must be denied on the merits.

### 2.    Whether Defendants' Closing Argument was Prejudicial

Plaintiff contends that he is entitled to a new trial due to alleged improprieties in Defendants' closing argument.  Defendants respond that Plaintiff has waived this argument by failing to object during trial.  Defendant also argues that even if Plaintiff did not waive this argument, Plaintiff suffered no prejudice as a result of Defendants' closing argument.

Addressing first Defendants' waiver argument, "it is clear that a party who fails to object to errors at trial waives the right to complain about them following trial." *Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998).  Indeed, courts consistently hold that "[c]ounsel's failure to object precludes him from seeking a new trial on the grounds of the impropriety of opposing counsel's

closing remarks." *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979) (citation

omitted); *see also Waldorf*, 142 F.3d at 629 (affirming denial of motion for new trial because

counsel failed to object to closing remarks at trial); *Dunn v. HOVIC*, 1 F.3d 1371, 1377 (3d Cir.

1993) (en banc), *modified on other grounds*, 13 F.3d 58 (3d Cir. 1993), *cert. denied*, 510 U.S.

1031 (1993) ("We note that OCF failed to make a timely objection with respect to the statements

referred to . . . above, and thus has waived its challenge to these statements on appeal." (citation

omitted)); *Loesch v. City of Phila.*, No. 05-578, 2008 WL 2367310, at *6 (E.D. Pa. June 4, 2008)

("Defendant made no objection to counsel's remarks either at the time they were made or at any

time afterwards, and thus has waived the right to object to them now." (citations omitted)).

Plaintiff did not raise any objection to Defendants' closing arguments during trial.  Accordingly,

Plaintiff has waived the right to object now.

There is nevertheless an exception to this rule.  Even though a party may fail to timely

object to the alleged inappropriate statements during closing argument, a court may still review

the matter if "exceptional circumstances" exist.  *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107,

116 (3d Cir. 1992), *cert. denied*, 507 U.S. 1005 (1993) (citation omitted).  Exceptional

circumstances exist where a "manifest injustice would result" or where "counsel failed to object

to a fundamental and highly prejudicial error resulting in a miscarriage of justice."  *Id.* (citations

omitted).  Even when a timely objection is made during trial, "[a] new trial may be granted only

where the improper statements made it reasonably probable that the verdict was influenced by

prejudicial statements."  *Greenleaf*, 174 F.3d at 363 (internal quotation marks and citation

omitted); *see also Price v. Trans Union, L.L.C.*, 839 F. Supp. 2d 785, 806 (E.D. Pa. 2012)

(noting that the general standard espoused in *Greenleaf* applies only when a timely objection is

made, and in the absence of a timely objection, a new trial is only warranted where there is

manifest prejudice).  Appellate courts defer to the district court's assessment of "prejudicial impact," "[b]ecause the trial judge was present and able to judge the impact of counsel's remarks" and "is in a far better position . . . to appraise the effect of the improper argument of counsel." *Fineman*, 980 F.2d at 207 (citations omitted).  Where civil jury trials are concerned, "improper comments during closing arguments rarely rise to the level of reversible error." *Dunn*, 1 F.3d at 1377 (citation omitted).

In support of his Motion, Plaintiff argues that Defendants' closing argument was improper in the following ways:  Defendants made arguments not supported by record evidence; Defendants suggested Plaintiff's counsel was untruthful; Defendants injected race into the closing arguments; and Defendants made an inflammatory appeal to the jury to reach a verdict contrary to the applicable law.  (Pl.'s Br. 32-38.)  Plaintiff cites specific and lengthy excerpts from Defendants' closing argument to support his arguments.  (*Id.*)

Plaintiff first complains that Defendants argued in their opening statement and closing argument that Plaintiff used the full "n-word" several times in the June 23, 2007 meeting. Plaintiff contends that the evidence of record simply does not support such an argument. Plaintiff overlooks the notes of the sensitivity trainer reflecting what Plaintiff told her during his training.  Ann Malone was the sensitivity trainer who saw Plaintiff in July 2007.  (June 11, 2015 A.M. Trial Tr. 26-27, ECF No. 172.)  She saw Plaintiff on two sessions and took progress notes during those sessions.  (*Id.* at 28.)  Her progress notes reflect that Plaintiff told her that he used the full word "nigger" at the June 23, 2007 meeting "several times."  (*Id.* at 33-34.)  Defendants' closing arguments were plainly based upon these progress notes.  Those notes may have been the sole source upon which to make the argument, and the evidence may have been called into question by Malone's own later testimony that she did not recall how many times Plaintiff used

the word.  (*Id*. at 41.)  Nevertheless, the content of the notes was evidence of record.  It was for the jury to decide what amount of credibility, if any, to afford it.

Plaintiff next complains that Defendants impermissibly injected race into closing arguments.  He focuses on Defendants noting during their closing argument that the jury was all white (*id*. at 59), and if they found for Plaintiff the next day's headlines would reflect a jury condoning the use of the "n-word" (*id*. at 92).  The reality is that this case was about race.  The jury had to decide whether a black employee at Fox 29 who used the word "nigger" would be treated the same as Plaintiff, a white employee who used the word.  In fact, Plaintiff's counsel in her opening statement began the trial by asking the question, "If Tom Burlington was black would he have been fired?  That's the question to keep in mind throughout this entire case." (June 8 A.M. Trial Tr. 26.)  She began her closing argument in the same fashion:  "A week ago today I stood in front of you and the first words out of my mouth were if Tom Burlington was black would he have been fired.  And I come back to you today because that still remains the ultimate question in this case."  (June 15 A.M. Trial Tr. 6.)  We do not condone Defendants noting the race of the jury, or speculating as to a news headline stemming from their verdict.  If Plaintiff had objected to the statement, the objection would have been sustained, the jury would have been instructed to disregard the statement, and counsel would have been directed to stick to the evidence and testimony presented during the trial.  There was no objection.  We are satisfied that these statements in the context of this particular case do not rise to the level of a manifest injustice warranting a new trial.

Plaintiff also complains that Defendants impermissibly urged the jury to "send a message" in rejecting Plaintiff's claims.  (Pl.'s Br. 61-62 (citing June 15, 2015 A.M. Trial Tr. 91-92, ECF No. 181).)  A theme of Defendants' case, as evidenced by their opening statement and

closing argument, was that Plaintiff sought to justify his use of the "n-word" at the June 23, 2007

newsroom meeting through this litigation.  During closing argument, Defendants suggested to

the jury:  "you have to send a message that you can't do this, it's not right, it's wrong, it's wrong,

it's wrong."  (June 15 A.M. Trial Tr. 92.)  This was not the only request to the jury to "send a

message."  Plaintiff also made that request, in closing argument:

> *Send the message* that in this country, we will have one rule book for employees,
> one rule book will apply to everyone.
>
> *If you don't send the message*, it will be left that in this country, it would be okay
> for separate rule books for separate people based upon the shade of your skin, or
> your age, or your gender.

(*Id*. at 51 (emphasis added).)  In addition, Plaintiff made that request in his rebuttal to

Defendants' closing argument:

> And it is important that white people are not mistreated in the workplace because
> of their race.  *And I ask that you send that message* to wherever Mr. Renda is.
> Make sure that he can hear you, say it loud and clear, and write it down so that he
> can read it.

(*Id*. at 102 (emphasis added).)  There is no "*per se* rule against invitations to a jury to 'send a

message.'"  *Greenleaf*, 174 F.3d at 363 n.9.  Counsel for both Plaintiff and Defendants invited

the jury to send a message to their respective opposing side.  One may even argue that

Defendants made the invitation in response to Plaintiff first requesting the jury to "send a

message" in  closing argument.  In any event, these statements cannot be considered as anything

other than overly rhetorical.  Defendants' sole request to the jury to send a message certainly did

not adversely impact the jury's impartiality any more than did Plaintiff's repeated requests for

the jury to send a message.

Finally, Plaintiff complains that Defendants impermissibly attacked Plaintiff's counsel

during their closing argument by suggesting that Plaintiff's counsel was untruthful.  (Pl.'s Br. 36

(citing June 15 A.M. Trial Tr. 86).)  Plaintiff cites to Defendants' argument that Plaintiff suggested that Ali was only interviewing African Americans during her investigation, but that a witness called to testify by the Defendants refuted that.  (June 15 A.M. Trial Tr. 86.)  When the arguments here are viewed in context, Defendants do not attack the veracity of Plaintiff's counsel.  Defendants are simply arguing the evidence.  We note however that, "[a]side from numerous ethical reasons, it is simply not a proper comment upon the evidence to attack opposing counsel."  Craig Lee Montz, *Why Lawyers Continue to Cross the Line in Closing Argument:  An Examination of Federal and State Cases*, 28 Ohio N.U. L. Rev. 67, 105-06 (2001).  We do not view Defendants' arguments to constitute an attack on Plaintiff's counsel. Even if we did, these arguments fail to rise to the level of causing a manifest injustice.

"It is clear that counsel on both sides of the table share a duty to confine arguments to the jury within proper bounds."  *United States v. Young*, 470 U.S. 1, 8 (1985).  And it is recognized that "[t]he line separating acceptable from improper advocacy is not easily drawn."  *Id.* at 7.  We do not condone either Plaintiff's or Defendants' closing arguments here as examples to follow. Certainly, both closing arguments "were not models deserving of inclusion in a trial advocacy textbook."  *United States v. Mohammad*, 53 F.3d 1426, 1433 (7th Cir. 1995), *overruled on other grounds*, *United States v. Sawyer*, 521 F.3d 792 (7th Cir. 2008).  But, Defendants' closing argument, particularly viewed in light of Plaintiff's closing argument, was not so manifestly prejudicial as to warrant a new trial.  *See*, *e.g.*, *Dunn*, 1 F.3d at 1377 (noting that "our disapproval of portions of the closing is not enough to warrant reversal on that ground.").  The evidence presented supports the jury's verdict.  Moreover, there was no indication during trial that the jury would be incapable of setting aside all of the rhetorical noise, presented by *both* Plaintiff and Defendants during closing arguments, to properly weigh the facts and decide the

issues.  The jury was instructed that the arguments of counsel do not constitute evidence.  (June

15 A.M. Trial Tr. 109, 111.)  Juries are presumed to follow the court's instructions.  *Richardson*

*v. Marsh*, 481 U.S. 200, 211 (1987).

The record does not support the conclusion that Defendants' closing argument resulted in

a manifest prejudice.  Plaintiff's Rule 59 Motion for a new trial, on the basis of Defendants'

closing argument, will be denied.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for post-trial relief will be denied.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**